UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ARNOLD McKELVEY,

                                        Plaintiff,

                                                                9:12-CV-94

v.

                                                                (LEK/TWD)

BRIAN FISCHER, Commissioner; and
MR. BARBINI, Hearing Officer,

                                        Defendants.
_____

APPEARANCES:                            OF COUNSEL:

ARNOLD McKELVEY
Plaintiff *pro se*
736 Riverside Drive
Apt 1F
New York, New York 10031

HON. ERIC T. SCHNEIDERMAN              JAMES J. SEAMAN ESQ.
Attorney General for the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12223

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

*Pro se* Plaintiff Arnold McKelvey, a former New York State prison inmate, has

commenced this action pursuant to 42 U.S.C. § 1983, alleging violation of his Fourteenth

Amendment due process rights in connection with a Tier III disciplinary hearing that resulted in a

subsequently reversed determination of guilt and his being kept in the Special Housing Unit

("SHU") for thirty-one days after the reversal.  (Dkt. No. 13 at 3, 8.)  Defendant has sued Robert

Barbini ("Barbini"), the Hudson Correctional Facility ("Hudson") hearing officer whose

determination was reversed, and Brian Fischer ("Fischer"), Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"). (Dkt. No. 13; Dkt. No. 24-14 at ¶ 2.) Now before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] (Dkt. No. 24.) Plaintiff has opposed the motion. (Dkt. No. 26.) For the reasons that follow, I recommend that Defendants' motion be granted.

## I.     BACKGROUND

### A.     Misbehavior Report

In April of 2011, Christian Nunez ("Nunez"), an investigator with the Inspector Generals Office since March of 2005, was assigned to investigate a case involving the discovery of a letter to recent parolee, Devin Walls, found and confiscated by the parole staff at Devin Wall's residence. (Dkt. No. 24-19 at ¶¶ 1-3; Dkt. No. 24-20 at 1-2.) The letter was in an envelope addressed to Kyeisha Walls. (Dkt. No. 24-19 at ¶ 2; Dkt. No. 24-20 at 4.) Plaintiff's name and his return address at Hudson were on the envelope. *Id.* The letter solicited Devin Walls to smuggle marijuana into Hudson through a package, a visit, or by throwing it over the Hudson fence by the handball court by E-cottage.[2] (Dkt. No. 24-20 at 1-2.)

On June 6, 2011, while Plaintiff was confined at Hudson, he was interviewed by Nunez concerning the letter. (Dkt. No. 24-19 at ¶ 4; Dkt. No. 24-21; Dkt. No. 24-2 at 16-19, 26-27.)

---

[1] Defendants' motion has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

[2] Because the handwritten letter is difficult to decipher, Defendant Barbini read the letter into evidence at Plaintiff's disciplinary hearing, and I have relied on the transcription in reviewing those parts of the letter I found illegible. (Dkt. No. 24-16 at 4.)

According to Nunez, during the interview, Plaintiff admitted having written the letter.[3]  (Dkt. No. 24-19 at ¶ 4; Dkt. No. 24-21.)  While Plaintiff acknowledged writing to Kyeisha Walls and conceded that the handwriting on the envelope was his in his deposition testimony, Plaintiff has denied writing the marijuana solicitation letter to Devin Walls and has denied admitting to Nunez that he did so.[4]  (Dkt. No. 24-2 at 16-18, 26-27, 32-35; Dkt. No. 24-16 at 2; Dkt. 24-20 at 4.)

Twenty or thirty minutes after the interview with Nunez, Plaintiff was told he was going to the "box" and was subsequently taken to Greene Correctional Facility ("Greene") and placed in SHU because Hudson did not have an SHU.  (Dkt. No. 24-2 at 20.)  On the day he interviewed Plaintiff, Nunez filed a misbehavior report charging Plaintiff with a violation of DOCCS Rule 114.10, soliciting others to smuggle contraband (marijuana) into Hudson.  (Dkt. No. 24-5 at 1.)  Plaintiff was at Greene when he was given the misbehavior report and was held in the Greene SHU until his hearing.  *Id.* at 21.

**B.    Disciplinary Hearing**

Defendant Barbini began Plaintiff's Tier III disciplinary hearing on June 10, 2011, in the Greene SHU.  (Dkt. No. 24-16 at 1.)  Prior to the hearing, Plaintiff had requested that assistance in preparing his defense be provided by Sgt. Sullivan, and Plaintiff acknowledged at the hearing

---

[3]  In the report of his investigation and in his Declaration, Nunez has stated that Plaintiff told him that he wrote the letter to see if Devin Walls would go through with providing the drugs or "if he was all talk." (Dkt. No. 24-19 at ¶ 4; Dkt. No. 24-21.)

[4]  Plaintiff testified at his deposition that the letter he sent to Kyeisha Walls in the envelope was a different letter than the letter to Devin Walls.  (Dkt. No. 24-2 at 26.)  According to Plaintiff, he knew Kyeisha Walls through a friend he met at prison (not Devin Walls) and had written to her once or twice after seeing her picture, but had never heard back from her.  *Id.* at 28-31.

that the assistance had been provided to him on June 7, 2011.[5] *Id.* Barbini advised Plaintiff on the record that he was entitled to have witnesses on his behalf and that all of the testimony given at the hearing would be taped. *Id.* Plaintiff was also told that nothing he said in his response to the charges would be used against him in any criminal proceeding and was advised that he should present all oral or documentary evidence he wanted Barbini to consider. *Id.*

The hearing transcript reveals that Plaintiff identified no witnesses he wished to call when asked by Barbini at the commencement of the hearing. *Id.* Plaintiff pled not guilty to the smuggling charge. *Id.* at 2. When asked if he had any defense, procedural objections, or statement of explanation regarding the charges, Plaintiff denied writing the letter and denied ever soliciting anything. *Id.* After Plaintiff's denial, Barbini made a telephone call to see if he could call Nunez as a witness, and after speaking to Nunez, informed Plaintiff that Nunez was going to send Barbini a copy of the letter to Devin Walls. *Id.* at 3. Barbini then adjourned the hearing pending receipt of the letter. *Id.*

Plaintiff's disciplinary hearing resumed on June 16, 2011. *Id.* Barbini showed Plaintiff the letter and envelope and entered them into evidence at the hearing. *Id.* at 3-4. Plaintiff told Barbini that he knew nothing about the letter – that he was just finding out about it at the hearing. *Id.* at 4. Barbini then informed Plaintiff that he had asked senior correction counseling to go through Plaintiff's records and find a handwriting sample to compare with the letter and had been

---

[5] The 2011 Assistant Selection form signed by both Plaintiff and Sgt. Sullivan on June 7, 2011 indicates that the two met on that date. However, it does not list any inmates or other persons Plaintiff wanted interviewed as potential witnesses. (Dkt. No. 24-8.)

given an April 5, 2010 memo that Plaintiff had written to correctional counselor Morgan.[6] *Id.; see also* Dkt. No. 24-7 at 2-3; Dkt. No. 24-7 at 2.  Barbini was of the opinion that the handwriting in the letter to Devin Walls and the memo to Morgan were the same.  *Id.* at 5.  When Plaintiff asked Barbini whether a parole officer had found the letter to Devin Walls, Barbini indicated that he only had the misbehavior report and did not know the background of the investigation, which is why he had requested the handwriting sample.  *Id.* at 6.  Plaintiff told Barbini that the reason he asked was that Nunez had told him that a parole officer had found the letter at Kyeisha Walls' house.  *Id.* at 5.  Nunez did not testify at Plaintiff's hearing.  (Dkt. No. 24-16.)

Barbini denied on relevance grounds Plaintiff's request to call two character witnesses from the mess hall where he worked.  *Id.* at 5.  When asked by Barbini before the hearing ended whether he had any other witnesses or documentary evidence to present, or had procedural objections to the hearing, Plaintiff responded he did not.  *Id.* at 5-6.  Barbini thereafter read into the record his written disposition finding Plaintiff guilty of the smuggling violation.  *Id.* at 6. The evidence considered by Barbini included the misbehavior report, the letter soliciting drugs and the envelope, and Plaintiff's handwriting sample.  (Dkt. No. 24-15 at 2.)  Barbini imposed a penalty of ninety days in SHU and ninety days loss of packages, commissary, and phone.  (Dkt. No. 24-15 at 1.)  The official start date of Plaintiff's SHU confinement was June 6, 2011.  *Id.*

---

[6] In his Declaration, Barbini indicates that he obtained and reviewed more handwriting samples than the April 5, 2010 memo entered into evidence at Plaintiff's disciplinary hearing. (Dkt. No. 24-14 ¶ 11; Dkt. No. 24-7 at 2.)  However, there is nothing in the hearing transcript indicating that Barbini compared more than one sample of Plaintiff's handwriting with the letter to Devin Walls.  (Dkt. No. 24-6.)  Furthermore, the evidence list in the Superintendent's Hearing Disposition includes only the April 5, 2010 sample.  (Dkt. No. 24-15 at 2.)

### C.  Conditions in SHU

Plaintiff found the noise level and limitation of recreation time to one hour a day in SHU to be stressful.  (Dkt. No. 24-2 at 64.)  However, his major complaint about the conditions in SHU was the food.  *Id*. at 64-66.  According to Plaintiff, the food was not good and gave him heartburn all the time.  *Id*. at 66.  Plaintiff had suffered from heartburn a little bit before going into SHU, but it was much worse in SHU because he was unable to eat the food that he could eat in the general population where he could go to the commissary and special events.  *Id*.  Plaintiff's heartburn was a serious enough problem that he was required to seek medical care for it on more than one occasion while in SHU.  *Id*.  Plaintiff testified at his deposition that because of the food, his weight went from about two-hundred forty pounds to two-hundred twenty pounds during the time he was in SHU.  *Id*. at 64-65.[7]

### D.  Retention in SHU Following Reversal

On August 1, 2011, the finding of guilt against Plaintiff was reversed by Albert Prack ("Prack"), DOCCS Director Special Housing/Inmate Disciplinary Program, on the grounds that "The misbehavior report is based on investigation which requires the hearing officer to call in the reporting employee."  (Dkt. No. 24-10; Dkt. No. 24-11.)  Plaintiff learned of the reversal from a counselor in SHU on August 8, 2011.  (Dkt. No. 24-2 at 51.)

On August 9, 2011, Plaintiff wrote to Prack asking for an immediate transfer out of SHU, back pay for his work program in which he made about 42 cents per hour, and reimbursement of

---

[7] Defendants have submitted DOCCS printouts showing Plaintiff's weight as two-hundred twenty pounds when he was taken into custody by DOCCS in 1998 and the same in November of 2012.  (Dkt. No. 24-14 at ¶¶ 25-26; Dkt. No. 24-16; Dkt. No. 24-17.)  They have not, however, submitted evidence of Plaintiff's weight as of the time he was placed in SHU or when he was released from SHU.

the $5.00 mandatory disciplinary surcharge imposed as a result of the determination of guilt.  *Id*. at 53.   In his response, Prack told Plaintiff that he was under consideration for transfer to a suitable facility and suggested that Plaintiff speak with his correction counselor.  Prack also informed Plaintiff that the facility officials were allowed to hold inmates past their release/reversal date from disciplinary confinement to accommodate DOCCS resources.  *Id*. at 54-55.  Plaintiff filed a grievance regarding his being kept in SHU after the reversal and was informed that he could be held in SHU until a bed opened up at a suitable facility.  (Dkt. No. 13 at 4, 15; Dkt. No. 24-2 at 62-63.)  Plaintiff was sent from the Greene SHU to Washington Correctional Facility on September 7, 2001, ninety-one days after the initial charge and thirty-one days after the reversal of the determination of guilt.  *Id*. at 8.

Plaintiff wrote to Defendant Fischer on September 20, 2011 requesting back pay and one-hundred dollars for each day he was kept in SHU after the reversal to compensate him for cruel and unusual punishment.  (Dkt. No. 24-2 at 57-58; Dkt. No. 24-12.)   Acting Deputy Commissioner, Kenneth Decker ("Decker"), responded to Plaintiff's letter to Fischer on October 7, 2011.  (Dkt. No. 24-2 at 59-60; Dkt. No. 24-13.)  Decker informed Plaintiff that he was responding at Fischer's request.  He told Plaintiff that his account had been credited with $29.25 for idle pay and no additional compensation was required.  *Id*.  Fischer did not respond to Plaintiff's letter himself.  (Dkt. No. 24-2 at 61.)

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action against Barbini, Fischer, and Nunez on December 29, 2011, in the United States District Court, Southern District of New York.  (Dkt. No. 1.)   The lawsuit was transferred to the Northern District of New York on January 18, 2012.  (Dkt. No. 4.)

On April 4, 2012, I issued a Memorandum-Decision and Order dismissing Plaintiff's claims against Nunez and Fischer, without prejudice, for failure to state a claim pursuant to 28 U.S.C. § 1915A. (Dkt. No. 8 at 4-6.) The Complaint was dismissed as against Fischer because the allegations revealed he was being sued based solely upon his supervisory position at DOCCS. *Id*. at 5.

I granted Plaintiff's motion to serve an amended complaint in a Decision and Order issued on June 12, 2012. (Dkt. No. 12.) Defendants Barbini and Fischer thereafter served their respective Answers to the Amended Complaint, with both asserting a qualified immunity affirmative defense. (Dkt. Nos. 15 and 17.) Following Plaintiff's deposition, Defendants filed the summary judgment motion now before me.[8] (Dkt. No. 24.) Plaintiff thereafter filed his opposition. (Dkt. No. 26.)

## III. APPLICABLE LEGAL STANDARD

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-252 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is

---

[8] Plaintiff's Amended Complaint is devoid of allegations suggesting that he has sued Defendants Barbini and Fischer for money damages in their official capacities, and the issue of official liability has not been addressed in Defendants' motion for summary judgment. To the extent, if at all, Plaintiff did intend to sue Defendants for money damages in their official capacities, I recommend that those claims be dismissed, with prejudice, *sua sponte* on Eleventh Amendment grounds pursuant to 28 U.S.C. § 1915A. *See Johnson v. Enu*, No. 08-CV-158, 2011 WL 3439179, at *7, 2011 U.S. Dist. LEXIS 86831, at *19 (N.D.N.Y. July 13, 2011).

"genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876 at *3, 1999 U.S. Dist. LEXIS 16767 at *8 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

In opposition to Defendants' motion, Plaintiff has filed only a brief letter indicating generally his intent to pursue his due process claims relating to his disciplinary hearing and retention in SHU following the reversal. (Dkt. No. 26.) Plaintiff's Amended Complaint, which is verified, should be treated as an affidavit that can be considered in opposition to Defendants'

9

motion.[9]  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.").  Where, as in this case, a party has failed to respond to the movant's statement of material facts as required under N.D.N.Y.  L.R. 7.1(a)(3), the facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record,[10] and (2) the nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of failing to respond to the motion.[11]  *See Champion, v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996.)

## IV.  ANALYSIS

### A.  Defendant Fischer

In his Amended Complaint, Plaintiff has alleged that as DOCCS Commissioner, Fischer is responsible for the rules and regulations governing inmates.  (Dkt. No. 13 at 9.)  Plaintiff also claims in conclusory fashion that Fischer "after being informed of the violation through a report or appeal, failed to remedy the wrong, and he created a policy or custom under which

---

[9]  Plaintiff's Amended Complaint in this case was properly verified by declaration under 28 U.S.C. § 1746.  (Dkt. No. 13 at 7.)  *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (use of the language "under penalty of perjury" substantially complies with § 1746).

[10]  L.R. 7.1(a)(3) provides that "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." However, see *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d. Cir. 2004) ("[I]n determining whether the moving party has met his burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts in the moving party's [Statement of Material Facts].  It must be satisfied that the citation to evidence in the record supports the assertion.") (citations omitted).

[11]  Defendants have complied with L.R. 56.2 by providing Plaintiff with the requisite notice of the consequences of his failure to respond to his summary judgment motion.  (Dkt. No. 24 at 3.)

unconstitutional practices occurred or allowed such a policy or custom to continue."[12]  *Id.*

Plaintiff also contends that Fischer was "grossly negligent in supervising subordinates who

committed the wrongful acts."  *Id.*

The law is clear that "personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983."  *McKinnon v. Patterson,*

568 F.2d 930, 934 (2d Cir. 1977).  "Because vicarious liability is inapplicable to . . . § 1983 suits,

a plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

("Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of *respondeat superior*.").  "Holding a position in a hierarchical

chain of command, without more, is insufficient to support a showing of personal involvement."

*Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist.

LEXIS 25367, at *22-23 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon*, 568 F.2d at 934); *see also*

*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of

command' is insufficient to implicate a state commissioner of corrections . . . in a § 1983 claim")

(citing *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)).  Therefore, "a plaintiff must . . .

allege a tangible connection between the acts of a defendant and the injuries suffered."  *Bass v.*

*Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state

a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged

---

[12]  I have broadly construed the "violation" referred to by Plaintiff to include both the lack
of evidence supporting the misbehavior report on which Plaintiff was found guilty and his
retention in SHU after the reversal.  (Dkt. No. 13 at 9.)

constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon,* 58 F.3d at 873.[13]

There is no evidence in the summary judgment record showing personal involvement by Fischer in either Plaintiff's disciplinary hearing or his retention in SHU after reversal of Barbini's determination of guilt. Without personal involvement, liability cannot be established against Fischer under any of the categories identified in *Colon*. *See Bass,* 790 F.2d at 263 (tangible connection needed between defendant's actions and plaintiff's damages); *Nash v. McGinnis*, 585 F. Supp. 2d 455, 460 (W.D.N.Y. 2008) ("Although plaintiff need not plead facts in great detail, the formulaic allegation that [the Superintendent] was aware of the alleged violations and did nothing to stop them from occurring, without *some* factual allegations to explain the basis for that conclusion, is insufficient to render it plausible that [the Superintendent] was personally involved in the alleged constitutional deprivations."); *Bridgewater v. Taylor*, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011); *White v. Fischer*, No. 9:09-CV-240 (DNH/DEP), 2010 WL 624081, at *6, 2010 U.S. Dist. LEXIS 15492, at *19 (N.D.N.Y. Feb. 18, 2010) ("Vague and conclusory allegations that a supervisor failed to train or properly monitor the actions of subordinate

---

[13] The Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) has arguably nullified some of the categories set forth in *Colon*. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). However, the Second Circuit has yet to issue a decision addressing *Iqbal's* effect on the *Colon* categories, and I will assume for purposes of this motion that *Colon* remains good law.

employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see also Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) (vague and conclusory allegations that a supervisor has failed to properly monitor the actions of subordinate employees do not suffice to establish the requisite personal involvement and support a finding of liability); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (dismissal of a § 1983 claim is proper where plaintiff does no more than allege defendant was in charge of the prison).

Plaintiff did write to Fischer requesting back pay and compensation for being kept in SHU after the reversal of the guilty finding against him, but only after he had been transferred out of SHU. (Dkt. No. 24-12.) Even if he had written to Fischer seeking release from SHU while still confined there, courts in this district have repeatedly held that supervisory liability cannot be established by an official's failure to respond to grievance letters or requests for investigations from prisoners.[14] *See, e.g., Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (noting that a number of courts have held that "[i]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.") (citation and internal quotation marks omitted); *Walker v. Pataro*, No. 99 Civ. 4607 (GBD)(AJP), 2002 WL 664040, at *12, 2002 U.S. Dist. LEXIS 7067, at *43 (S.D.N.Y. Apr. 23, 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that

---

[14] The evidence shows that Fischer delegated providing a response to Plaintiff's letter to Acting Deputy Commissioner Kenneth Decker. (Dkt. No. 24-13.) *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (holding that DOCCS Commissioner was not personally involved in an alleged constitutional violation where he delegated the response to an inmate's letter of complaint to a staff member for decision and response).

13

§ 1983 does not impose *respondeat superior* liability."); *Rivera v. Goord,* 119 F. Supp. 2d 327,

344 (S.D.N.Y. 2000) (allegations that inmate wrote to prison officials and was ignored are

insufficient to hold those officials liable under § 1983).

Given the complete lack of evidence of personal involvement by Defendant Fischer in

the determination of guilt by Barbini that was ultimately reversed, the conditions in the Greene

SHU, or the delay in moving Plaintiff from SHU following the reversal, I recommend that

Fischer's motion for summary judgment be granted.

**B.      Defendant Barbini**

Plaintiff claims that Defendant Barbini deprived him of his due process rights under the

Fourteenth Amendment by failing to conduct his own investigation of the charges against

Plaintiff and failing to call Nunez as a witness at Plaintiff's disciplinary hearing.[15]  (Dkt. No. 24-

2 at 24-25.)

1.      Liberty Interest

The Fourteenth Amendment to the United States Constitution provides that "[n]o State

shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const.

amend. XIV, § 1.  "Although prison inmates necessarily have their liberty severely curtailed

while incarcerated, they are nevertheless entitled to certain procedural protections when

---

[15]  Plaintiff may also be asserting a claim against Barbini with respect to his being
retained in SHU after the reversal of Barbini's determination of guilt.  However, in his
Declaration, Barbini states that he had no involvement in Plaintiff being kept in SHU after the
reversal.  (Dkt. No. 24-14 at ¶ 27.)  Furthermore, Plaintiff has submitted no evidence showing
personal involvement by Barbini, without which he has no claim against Barbini with respect to
his being retained in SHU after the reversal.  *See McKinnon*, 568 F.2d at 934 ("personal
involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of
damages under § 1983").

disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted); *see also J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) ("We have held that a prisoner has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'") (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

The Second Circuit has instructed that in determining whether an inmate's SHU confinement has imposed an atypical and significant hardship, a court must consider, among other things, both the duration and conditions of confinement. *J.S.*, 714 F.3d at 106. "In the absence of a detailed factual record, [the Second Circuit has] affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short – less than the 30 days that the *Sandin* plaintiff spent in SHU – and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66; *see also Sealey v. Giltner*, 116 F.3d 47, 52 (2d Cir. 1997) ("[W]e have indicated the desirability of fact-finding before determining whether a prisoner has a liberty interest in remaining free from segregated confinement.") (citations omitted).

"In determining whether [a plaintiff] endured an atypical and significant hardship, the magistrate judge [is] required to examine the conditions of confinement 'in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis v. Barrett*, 576 F.3d 129, 133-34 (2d Cir. 2009) (quoting *Welch v.*

*Bartlett*, 196 F.3d 389, 392-93 (2d Cir. 1999)). The Second Circuit has stated that "[d]isputes about conditions may not be resolved on summary judgment." *Palmer,* 364 F.3d at 65 (citing *Wright v. Coughlin*, 132 F.3d 133,137-38 (2d Cir. 1998)). Only when the conditions are uncontested may a district court resolve the issue of atypicality of confinement as a matter of law. *Id.*

Plaintiff has complained that the noise in SHU was stressful to him, that he was deprived of all of the recreational programs he was able to participate in while in the general population, and that he was allowed only one hour a day for exercise and recreation. (Dkt. No. 24-2 at 23, 64.) Plaintiff also claims that the food he was served in SHU made him ill, requiring him to seek medical care on more than one occasion and causing him to lose a significant amount of weight.[16] (Dkt. No. 24-2 at 64-66.) Plaintiff testified at his deposition that he had only a little heartburn when he was in the general population because he was able to obtain food from the commissary and other places, whereas he had heartburn all the time from the food in SHU. *Id*. at 66. According to Plaintiff, because of the food, he lost approximately twenty pounds while in SHU.[17] *Id*. at 64-65.

Defendants have submitted no evidence comparing the availability of exercise and recreation available to inmates in the general population to that in SHU generally, or to that made

---

[16] The Second Circuit has held that allegations of food deprivation should be resolved in plaintiff's favor on a summary judgment motion. *Wright v. Coughlin*, 132 F.3d 133, 138 (2d Cir. 1998). Granted Plaintiff does not allege he was deprived of food. However, his claim that the food he was given made him ill and led to a significant weight loss while in SHU suggests at least the possibility of a food related atypical and substantial hardship.

[17] By submitting evidence of Plaintiff's weigh in 1999 and late 2012, Defendants have suggested, but not proven, that Plaintiff did not lose weight while in SHU as he has claimed.

available to Plaintiff specifically. Nor have Defendants submitted evidence comparing the diets available to inmates in the general population and the manner in which food related digestive problems are handled in the general population, *i.e.*, whether inmates are provided alternative diets when they have digestive problems, with SHU generally, and specifically with Plaintiff's situation while he was in SHU. In fact, the only evidence Defendants have submitted concerning Plaintiff's recreational restriction and diet while in SHU, and the medical care he was given for his heartburn, is Plaintiff's deposition testimony.

As a result, there is not a sufficient factual record for me to make the comparison mandated by the Second Circuit in assessing whether Plaintiff has demonstrated a liberty interest with respect to his SHU confinement. *Davis,* 576 F.3d at 134; *see also Bowens v. Pollock*, No. 06-CV-0457A (Sr), 2010 WL 5589350, at 15, 2010 U.S. Dist. LEXIS 139884, at *40 (W.D.N.Y. Oct. 12, 2010) (district court concluding that it lacked a sufficient record upon which to assess whether plaintiff had demonstrated a liberty interest where defendants had presented no evidence regarding typical conditions of keeplock confinement as compared to the general population and the actual conditions of the plaintiff's keeplock). However, in order to evaluate whether Plaintiff was afforded adequate due process in connection with the disciplinary hearing that resulted in his being placed in SHU, and also whether Barbini is entitled to qualified immunity, I will assume, for purposes of this motion only, that Plaintiff's ninety-one day stay in SHU constituted an atypical and significant hardship sufficient to raise a protected liberty interest. *See Sira*, 380 F.3d at 69 (assuming, without deciding, that plaintiff's six-month confinement in SHU imposed an atypical hardship); *Luna v. Pico,* 356 F.3d 481, 487 (2d Cir. 2004) ("We assume, without deciding the issue, that [plaintiff] did suffer an 'atypical and significant hardship.")"; *Creech v.*

*Schoellkoph*, 688 F. Supp. 2d 205, 213 (W.D.N.Y. 2010) (assuming, without deciding, that plaintiff's 105 day stay in SHU constituted an atypical and significant hardship).

2.    <u>Due Process in Prison Disciplinary Hearings</u>

The Fourteenth Amendment due process protections afforded a prison inmate do not equate to "the full panoply of rights due to a defendant in a criminal prosecution." *Sira*, 380 F.3d at 69. "An inmate is entitled to advance written notice of the charges against him; a hearing affording a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Id*. (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The due process clause also requires that a hearing officer's determination be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 455 (1985). "This standard is extremely tolerant and is satisfied if 'there is *any* evidence in the record that supports' the disciplinary ruling." *Sira,* 380 F.3d at 69 (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)). Nevertheless, in the Second Circuit, the "some evidence" standard requires some "reliable evidence." *Luna*, 356 F.3d at 488.

3.    <u>Plaintiff's Due Process Claim</u>

Plaintiff claims that he was denied due process in his disciplinary hearing because Barbini did not conduct an independent investigation, and there was insufficient evidence to find Plaintiff guilty without the testimony of Nunez, who had conducted the investigation leading to the Rule 114.10 smuggling charge and had filed the misbehavior report against Plaintiff.[18] (Dkt. No. 24-2

---

[18] There appears to be no question but that Plaintiff was given advance written notice of the charge; that Sgt. Sullivan was made available to assist him in preparing a defense to the charge; that Barbini was a fair and impartial hearing officer; and that Plaintiff was given a written

at 24-25.)  Plaintiff's claim that Barbini's failure to conduct an independent investigation of the charge against Plaintiff violated Plaintiff's due process rights is without merit because Plaintiff had no right to an independent investigation by the hearing officer.  *See Robinson v. Brown*, No. 9:11-CV-0758 (TJM/DEP), 2012 WL 6799725, at *5, 2012 U.S. Dist. LEXIS 183782, at *17-18 (N.D.N.Y. Nov. 1, 2012) (there is no requirement that a hearing officer conduct an independent investigation).

Furthermore, while it is true that Barbini's determination of guilt on the charge in the misbehavior report was reversed by Prack because "[t]he misbehavior report is based on investigation which requires the hearing officer to call in the reporting employee," I conclude that the evidence relied upon Barbini satisfied the "some evidence" requirement in *Hill*, 472 U.S. 455, as well as the "reliable evidence" requirement in *Luna*, 356 F.3d at 488.

The evidence considered in Plaintiff's disciplinary hearing included the misbehavior report by Nunez; the letter to Devin Walls and envelope addressed to Kyeisha Walls in which the letter was found; and an April 5, 2010 handwritten memo from Plaintiff to corrections counselor Morgan that was used for a handwriting comparison by Barbini.  (Dkt. No. 24-15 at 2.)  According to Barbini, when he reviewed the letter to Devin Walls, he noticed that the author had made reference to a "handball court by E cottage."  Hudson, where Plaintiff was incarcerated, had a handball court near E cottage, which led Barbini to believe that the letter came from

---

statement of the disposition, which included the evidence relied upon and reasons for the disciplinary action taken by Barbini, as required under *Wolff*.  (Dkt. No. 24-5; Dkt. No. 24-6; Dkt. No. 24-8; Dkt. No. 24-15.)  Barbini also gave Plaintiff the opportunity to call witnesses and present documentary evidence.  (Dkt. No. 24-2 at 35; Dkt. No. 24-6 at 1, 5.)  Barbini's denial on relevance grounds of Plaintiff's request to call two individuals as character witnesses did not violate his due process rights.  *See Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999) (hearing officer does not violate due process by excluding irrelevant testimony).

19

someone at Hudson. (Dkt. No. 24-14 at ¶ 9.) Barbini strongly suspected Plaintiff was the author

of the letter when he saw that Plaintiff's name and return address were on the envelope. *Id.* at ¶

10. Barbini states in his Declaration that when he compared a samples of Plaintiff's handwriting

with the letter to Devin Walls, it was his opinion that the handwriting was the same.[19] *Id.* at ¶ 11.

Barbini concluded that because of the evidence pointing to Plaintiff's guilt, there was no need to

call additional witnesses. *Id.* at ¶ 12.

Courts in this district have found lay handwriting comparisons sufficient to establish

"some evidence" of guilt in disciplinary hearings. *See Woodard v. Shanley*, No. 10-CV-1121

(DNH/DRH), 2011 WL 6845772, at *4, 2011 U.S. Dist. LEXIS 150397 *11-12 (N.D.N.Y. Dec.

7, 2011) (three lay opinions that plaintiff had written an anonymous threat letter constituted

"some evidence" sufficient for due process), *report and recommendation adopted,* 2011 WL

6845771, 2011 U.S. Dist. LEXIS 149279 (N.D.N.Y. Dec. 29, 2011), *aff'd*, 505 F. App'x 55 (2d

Cir. 2012); *Neree v. O'Hara*, No. 9:09-CV-802 (MAD/ATB), 2011 WL 3841551, at *18, 2011

U.S. Dist. LEXIS 96640, at *61-63 (N.D.N.Y. July 20, 2011) (identification of plaintiff's

handwriting based upon comparison with known samples, corroborated by plaintiff's name and

inmate number on the document, constituted "some evidence" sufficient for due process); *see

also Monier v. Holt*, 4:CV-05-2062, 2005 WL 3531369, at 2, 2005 U.S. Dist. LEXIS 39058, at

*6-7 (M.D. Pa. Dec. 21, 2005) (testimony that handwriting in threatening note was comparable to

_____

[19] As previously noted, while Barbini states in his Declaration that he compared the letter
to Devin Walls with more than one document written by Plaintiff, the hearing transcript and
Superintendent's Hearing Disposition show that only one sample of Plaintiff's handwriting was
entered into evidence by Barbini at disciplinary hearing. Furthermore, the statements in
Barbini's Declaration with regard to internet research on handwriting analysis conducted by him
only in preparation for moving for summary judgment have no relevance.

a sample of plaintiff's handwriting constituted "some evidence" sufficient for due process), *aff'd*, 259 F. App'x 518 (3d Cir. 2007); *Bennett v. Jackson*, No. 2:06CV00019-WRW, 2006 WL 618124, at *2, 2006 U.S. Dist. LEXIS 13946, at *7 (E.D. Ark. Mar. 9, 2006) (plaintiff's due process rights were not violated by defendants' acceptance of testimony that a threatening note was comparable to a sample of plaintiff's handwriting, and defendants' failure to submit the document to a hand-writing expert for analysis did not violate *Wolff*).

Because the record shows that Barbini's determination of guilt was supported by "some evidence" sufficient for due process, I recommend that Barbini's motion for summary judgment on the grounds that he did not violate Plaintiff's due process rights be granted.

### 4. Qualified Immunity

Defendant Barbini also seeks dismissal of Plaintiff's due process claim against him on qualified immunity grounds. (Dkt. No. 15 at ¶ 7; Dkt. No. 24-23 at 12-14.) "The doctrine of qualified immunity shields public officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Salahuddin*, 467 F.3d at 273 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

> For a constitutional right to be "clearly established" for purposes of determining whether an officer is entitled to qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say *that in light of pre-existing law the unlawfulness must be apparent*."

*Mollica v. Volker*, 229 F.3d 366, 370-71 (2d Cir. 2000) (quoting *Anderson v. Creighton*, 483

U.S. 635, 640 (1987)) (emphasis in original). Even if a state official violates a plaintiff's constitutional rights, the official is afforded protection under the qualified immunity doctrine if "he objectively and reasonably believed that he was acting lawfully." *Creech,* 688 F. Supp. 2d at 215 (citing *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."[20]) (citation and internal quotation marks omitted).

Barbini did not violate clearly established law. "[N]either [the Second Circuit] nor the Supreme Court has clearly defined standards for determining what constitutes 'some evidence' in the context of prison disciplinary hearings; rather, decisions have addressed the problem piecemeal, focusing on the discrete problems raised by the facts of particular cases." *Johnson v. Goord*, 305 F. App'x 815, 818 (2d Cir. 2009) (quoting *Sira*, 380 F.3d at 81)). Moreover, courts addressing the issue have found that lay handwriting comparisons, particularly when corroborated by evidence like Plaintiff's name and return address on the envelope with the letter at issue, constitute "some evidence" sufficient for due process purposes. *See, e.g.*, *Neree,* 2011 WL 3841551, at *18 (handwriting identification evidence corroborated by plaintiff's name and inmate number on the document). In light of the foregoing, I recommend that in the event Barbini is not found entitled to summary judgment on the grounds that he did not violate Plaintiff's due process rights, that he be granted summary judgment on qualified immunity grounds.

**ACCORDINGLY**, it is hereby

---

[20] The summary judgment record is devoid of any suggestion whatsoever that Barbini performed his duties as hearing officer in an incompetent manner.

**RECOMMENDED** that Defendants Fischer and Barbini's motion for summary judgment (Dkt. No. 24) be **GRANTED**; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: June 12, 2013
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge